UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY BRISON,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.: 1:12-cv-01102 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF SHERRY BRISON |

　　　Sherry Brison ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred at step five of the sequential evaluation and in evaluating her credibility. Therefore, Plaintiff seeks judicial review of the administrative decision denying benefits. For the reasons set forth below, the ALJ's decision is **AFFIRMED**.

### PROCEDURAL HISTORY

　　　Plaintiff filed applications for disability insurance benefits and supplemental security income on August 27, 2008, alleging disability beginning May 1, 2007. (Doc. 12-6 at 5-13). The Social Security Administration denied her claims initially and upon reconsideration. (Doc. 12-3 at 13). After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on September 27, 2010. *Id.* at 31. The ALJ determined Plaintiff was not disabled under the Social Security Act, and

1

1  issued an order denying benefits on October 14, 2010. *Id.* at 10-22. The Appeals Council denied Plaintiff's request for review of the decision on May 9, 2012. *Id.* at 2-4. Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on July 6, 2012, seeking judicial review of the ALJ's decision. (Doc. 1). On March 18, 2013, Plaintiff filed her opening brief, asserting the ALJ erred in evaluating the evidence and failed to establish she is able to perform work in the national economy. (Doc. 17). Defendant filed a brief in opposition on May 9, 2013 (Doc. 21), to which Plaintiff filed a reply on May 24, 2013. (Doc. 22).

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.     Relevant Medical Opinions**

Dr. Kimball Hawkins performed a consultative psychological evaluation on October 24, 2008, at which he administered the Rey 15 Item Memory and Wechsler Memory Scale-III tests.  (Doc. 12-9 at 20-23).  Plaintiff reported she had a tenth grade education, and a history of child abuse and running away as a teenager.  *Id.* at 20.  In addition, Plaintiff reported that "she started drinking alcohol at 13 years old and has a history of chronic alcohol abuse," and last had a drink one month prior to the examination.  *Id.* at 21.  She informed Dr. Hawkins that she last worked two and a half years prior to the consultation, and "stopped working because of Hepatitis C and the treatment for that."  *Id.* at 20.  Further, Plaintiff told Dr. Hawkins she had "a feeling of panic, but ha[d] never received any treatment for her childhood issues."  *Id.*

Dr. Kimball determined Plaintiff was "oriented to person, place, and time," and was "responsive to questions and requests."  (Doc. 12-9 at 21).  In addition, Dr. Kimball observed: Plaintiff "has difficulty following multi-step directions."  *Id.*  According to Dr. Kimball, Plaintiff had a "below

normal, but . . . borderline score" on the mini-mental state exam. *Id.* at 22.  He found Plaintiff had "some significant deficits in immediate auditory memory," and "may have some mild cognitive deficits due to chronic drug and alcohol abuse and dependence." *Id.*  Dr. Kimball concluded:

> Her ability to understand, remember, and carry out complex instructions is questionable. Her ability to understand, remember, and carry out simple instructions is adequate on familiar tasks, although she made some errors today. She has some difficulty maintaining concentration, attention, and persistence as she fidgeted and twitched during the assessment. She is able to perform activities within a schedule and maintain regular attendance, but it would depend upon the job. She might have some difficulty completing a normal work day and work week without interruptions from psychologically based symptoms because of some avoidance due to anxiety.

*Id.* at 23.  Dr. Kimball recommended Plaintiff receive ongoing psychiatric treatment and counseling as needed.  *Id.*

Dr. Sarupinder Bhangoo conducted a comprehensive internal medicine evaluation.  (Doc. 12-9 at 25).  He noted Plaintiff alleged the treatment for Hepatics C "makes her unable to focus," and "[s]he quit working in 2007 because she was very tired."  *Id.*  Plaintiff reported she could "barely walk about four blocks" before she needed to rest, and she felt 'hot and cold all of the time."  *Id.*  Further, Plaintiff reported she had pain in her left arm and right ankle after a fall in the shower, which she rated as a "4/10 to 8/10."  *Id.*  Dr. Bhangoo observed Plaintiff walked "into the examining room without any difficulty," did not appear to be in pain, and "move[d] around well."  *Id.* at 26.  Dr. Bhangoo noted Plaintiff was "able to do all activities of daily living" and did not have any "specific tender spots, trigger points, or localized swelling."  *Id.* at 28.  He opined this was "suggestive that she . . . ha[d] mild side effects from her treatment rather than any specific medical problem and hence no disability can be assigned to it."  *Id.*  According to Dr. Bhangoo, Plaintiff was able to lift and carry 25 pounds frequently and 50 pounds occasionally, stand and/or walk 6 hours in an 8-hour day, and sit 8 hours in an 8-hour day.  *Id.*  He concluded Plaintiff did not have postural, manipulative, or communicative limitations.  *Id.* at 29.

On December 2, 2008, Dr. Randall Garland competed a psychiatric review technique form and mental residual functional capacity assessment.  (Doc. 12-9 at 30-46).  He noted Plaintiff suffered from substance abuse reported to be in remission, depression, and an anxiety disorder, not otherwise specified.  *Id.* at 33, 35.  Dr. Garland noted Plaintiff had moderate difficulties with activities of daily

living and maintaining concentration, persistence, or pace. *Id.* at 40. In addition, Plaintiff had mild difficulties in maintaining social functioning. *Id.* He opined Plaintiff was "not significantly limited" with her ability to understand, remember, and carry out very short and simple instructions. *Id.* at 44. Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; and be punctual. *Id.* Dr. Garland found Plaintiff was "not significantly limited" in all areas of social interaction and adaptation. *Id.* at 45.

Dr. Kammen completed a physical residual functional capacity assessment on February 4, 2009. (Doc. 12-9 at 49). Dr. Kammen opined Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds frequently; stand/and or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour workday. *Id.* at 50. According to Dr. Kammen, Plaintiff was able to frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. *Id.* at 51. She did not have manipulative, visual, communicative, or environmental limitations. *Id.* at 51-52. Therefore, Dr. Kammen opined Plaintiff was able to perform medium work[1] with limitations. *Id.* at 56.

Plaintiff's treating physician, Dr. Rajeev Krishan, completed a physical residual functional capacity assessment on February 10, 2009. (Doc. 12-9 at 57-59). Dr. Krishan opined Plaintiff had a medically verifiable condition that prevented her from performing certain tasks beginning May 28, 2008. *Id.* at 57. He opined Plaintiff was able to stand and/or walk 2-4 hours at a time and for a total of 2-4 hours, and she was able to sit 0-2 hours at one time and for a total of 2-4 hours during the day. *Id.* at 58. Dr. Krishan noted Plaintiff's fatigue may affect her coordination, but had no environmental restrictions. *Id.* Further, Dr. Krishan opined Plaintiff was able to lift and carry 15 pounds occasionally; never balance; occasionally climb, stoop, kneel, crouch, and crawl; and frequently reach from her waist to knees or chest. *Id.* at 59.

On April 16, 2009, Dr. Keith Quint reviewed the record and affirmed Dr. Kammen's assessment that Plaintiff was able to perform medium work with no more than occasional climbing of ladders, ropes and scaffolds. (Doc. 12-9 at 69).

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

**B.     Plaintiff's Administrative Hearing Testimony**

Plaintiff testified at an administrative hearing before the ALJ on September 27, 2010.  (Doc. 12-3 at 31).  She reported she had a driver's license and did not have any restrictions on her ability to drive. *Id.* at 36.  Plaintiff stated she had an eighth grade education and did not have difficulty with reading or writing. *Id.* at 36-37.  Plaintiff said she "tried to go to school at San Joaquin Valley College" to be a dental assistant, but did not complete the course. *Id.* at 37.  Her primary work experience was as a waitress. *Id.*

According to Plaintiff, she became disabled and did not work for pay after May 1, 2007.  (Doc. 12-3 at 37).  She explained she had "chronic fatigue," and her medication for hepatitis C caused an inability to focus. *Id.* at 38. Plaintiff reported she had panic attacks and "constantly" had to stop what she was doing to rest or catch her breath. *Id.* at 39.  Plaintiff said she was seeing a psychiatrist once a month for treatment, who made her discuss the "incest issues" of her past. *Id.* at 39, 42.

In addition, Plaintiff stated she had pain in her right ankle and shoulder. *Id.* at 38-39.  She reported that she was unable to do rehabilitation and was taking Hydrocodone because it was less expensive. *Id.* at 40.  She explained the pain was constant and she was unable to lift anything "for very long" because her arm would "start going numb." *Id.*  Plaintiff described the pain in her ankle as a 7 on a scale of 1 to 10, but with the medication it was a 4 out of 10. *Id.* at 41-42.

Plaintiff estimated she was able to lift and carry ten pounds.  (Doc. 12-3 at 43).  She believed she was able to stand for an hour without stopping, and could stand for three hours in an eight-hour day if she had the option to sit down and stand up as she wanted. *Id.*  Also, Plaintiff stated she could walk for fifteen minutes at one time, or thirty minutes total in an eight-hour day. *Id.*  However, she was "okay sitting down" and said she was able to sit "for quite a while." *Id.* at 44.  She reported she would need about three hours to lie down each day. *Id.*  Plaintiff believed she was able to kneel, but crawling would hurt her ankle and climbing stairs made her "really tired." *Id.* at 45.

With regard to her mental ability, Plaintiff believed she would be able to remember three out of five items if she went to a grocery store and did not write down the list.  (Doc. 12-3 at 46).  Plaintiff said that in the past she would have remembered all the items. *Id.*  She testified that she watched television, but was unable to pay attention sufficiently to follow an hour-long show. *Id.*  Plaintiff

reported she had "major anxiety" when she had to deal with unfamiliar things and groups of four or five people. *Id.* at 47.

She reported she was able to take care of her personal hygiene needs such as showering and washing her hair. (Doc. 12-3 at 48). Plaintiff said she would not go anywhere for a couple days at a time because she was "very depressed" an average of "four days a week." *Id.* at 49. Plaintiff described a typical day as follows: "I get up, I take my medication. I talk to my son before he goes to work. I lay back down. I feed my cat. And I just lay around a lot." *Id.* In addition, she may talk on the phone to her daughter; do chores such as laundry, grocery shopping, washing dishes, and mopping; and visit with her grandkids. *Id.* at 50. Although Plaintiff formerly went to church once a week, she said she was only able to go "once every two months." *Id.* at 51.

Plaintiff testified she had problems with alcohol in her past, but it had been about six months since she last drank regularly. (Doc. 12-3 at 51). She said she stopped drinking because of her liver, and the medication would not work if she drank. *Id.* However, Plaintiff explained she had not quit drinking completely and would "have a glass of wine once in a while." *Id.* at 53.

**C.    Vocational Expert's Testimony**

Kenneth Ferra, vocational expert ("VE") testified at the hearing after Plaintiff. He observed Plaintiff's past relevant work as a waitress was characterized by the *Dictionary of Occupational Titles*[2] as semi-skilled, light work.[3] (Doc. 12-3 at 57). There were no skills that would transfer to another job. *Id.* at 57-58.

The ALJ asked the VE to consider "a hypothetical person . . . of the same age, education, language and work background" as Plaintiff. (Doc. 12-3 at 58). First, the ALJ asked the VE to consider an individual who was capable of performing "the full range of light [work]" and "could understand, remember, and carry out simple, repetitive tasks sufficient for unskilled work." *Id.* Given

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

these limitations, the VE opined the hypothetical individual would not be able to perform Plaintiff's past relevant work. *Id.* The VE explained a person with these limitations could perform work such as cleaner, *DOT* 323.687-014; sorter, *DOT* 529.687-186; and packing line worker, *DOT* 753.687-038. *Id.*

Next, the ALJ asked the VE to consider an individual based upon the assessment of Dr. Rajeev Krishan (Exhibit 24F). (Doc. 12-3 at 59). Specifically, the ALJ asked the VE to evaluate an individual who "could lift, carry, push, pull 15, 1-5, pounds occasionally; stand and/or walk two to four hours in an eight-hour workday; sit two to four hours in an eight-hour workday; occasionally climb, stoops, kneel, crouch, and crawl, but never balance." *Id.* In addition, the ALJ asked him to "retain the same metal residual functional capacity from hypothetical number one, for simple, repetitive tasks." *Id.* The VE determined this person would not be able to perform Plaintiff's past relevant work, but was able to perform work "[a]t the sedentary level of exertion." *Id.* As examples, the VE identified the positions of order clerk, *DOT* 209.567-014; assembler, *DOT* 734.687-018; and nut sorter, *DOT* 521.687-086. *Id.*

Finally, the ALJ asked the VE to consider an individual based upon Plaintiff's testimony who "would require the ability to lie down a minimum of three hours in an eight-hour workday." (Doc. 12-3 at 60). The VE observed such an individual was unable to perform Plaintiff's past relevant work or any other work in the national economy. *Id.*

### D.     The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of May 1, 2007. (Doc. 12-3 at 15). Second, the ALJ found Plaintiff's severe impairments included: hepatitis C, hypertension, depression, alcohol dependence, and history of methamphetamine dependence. *Id.* Next, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a listing. *Id.* at 15-16.

The ALJ determined Plaintiff had residual functional capacity ("RFC") "to lift and/or carry, push and/or pull 15 pounds occasionally, stand and/or walk 2 to 4 hours in an 8-hour day, and sit 2 to 4 hours in an 8-hour day." (Doc. 12-3 at 16-17). Further, the ALJ found Plaintiff could "occasionally climb, stoop, kneel, crouch, and crawl, but never balance." *Id.* at 17. Mentally, Plaintiff had the "capacity to perform simple, repetitive tasks." *Id.* With this RFC, the ALJ found Plaintiff was unable to perform any past relevant work, but was able to perform "jobs that exist in significant numbers in

1   the national economy." *Id.* at 21.  Therefore, the ALJ concluded Plaintiff was not disabled as defined
2   by the Social Security Act.  *Id.* at 22.

## DISCUSSION AND ANALYSIS

**A.     The ALJ's credibility determination is supported by clear and convincing evidence.**

To evaluate a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints.  *Id.* at 1036.

An adverse credibility determination must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ may not discredit a claimant's testimony as to the severity of symptoms only because it is unsupported by objective medical evidence.  *See Bunnell*, 947 F.2d at 347-48.  In addition, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Factors that may be considered include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and her conduct, and a claimant's daily activities when weighing the claimant's credibility).

Here, the ALJ determined Plaintiff was "generally credible."  (Doc. 12-3 at 20).  According to the ALJ, "the claimant's medically determinable impairments could reasonably be expected to cause

the alleged symptoms." (Doc. 12-3 at 20). However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . ." *Id*. Supporting these findings, the ALJ considered Plaintiff's daily activities and the objective medical evidence.

### 1. Plaintiff's activities

When a claimant spends the day engaged in activities that are transferable to a work setting, a finding of this fact may be sufficient to discredit a claimant's allegations of a disabling impairment." *Morgan*, 169 F.3d at 600 (citing *Fair*, 885 F.2d at 603). For example, a claimant's ability to cook, clean, do laundry and manage finances may be sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances..."). Likewise, an ALJ may conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ considered daily activities as reported by her in the function report and at the administrative hearing. Plaintiff was able to do laundry for herself and her son, prepare meals "half the time," go out alone and shop for groceries, babysit, go to church, and visit with her children once a week. (Doc. 12-3 at 17). The ALJ found that this "wide range of daily activities" was "inconsistent with her claim of total disability." *Id.* at 20. As the Ninth Circuit explained, "Although the evidence of [the plaintiff's] daily activities may also admit of an interpretation more favorable to [her], the ALJ's interpretation was rational, and [the Court] 'must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch*, 400 F.3d at 680 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Thus, the ALJ's conclusion that Plaintiff's daily activities were inconsistent with her allegation of total disability must be upheld by the Court.

### 2. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.

1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

In this case, the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a simple statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). The ALJ noted Plaintiff "testified that she is not able to perform work even at the sedentary exertional level," but "even her treating doctor, Dr. Krishan, indicate[d] that she can perform work at a reduced range of exertion." (Doc. 12-3 at 20). The ALJ gave "great weight" to the opinion of Dr. Krishan which fulfills the ALJ's obligation to identify "what evidence undermines the testimony." *See Holohan*, 246 F.3d at 1208.

**B.     The ALJ did not err at step five.**

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1162(9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

Plaintiff contends the ALJ erred in finding she is capable of performing work at the sedentary level. (Doc. 17 at 7). Plaintiff contends that the RFC allows for the possibility that Plaintiff would only be able to "stand and/or walk 2 hours, and sit for 2 hours" (assuming the minimum ranges) for a

11

total of six hours in an eight-hour day, and as a result Plaintiff "would be unable to complete an 8-hour workday." *Id.* at 7-8. Therefore, Plaintiff contends the RFC defined by the ALJ demonstrates she could not work eight hours, and that the ALJ erred in relying on the vocational expert's testimony at step five to find she is capable of work in the national economy. *Id.* at 7-9.

When eliciting testimony from the VE, the ALJ must pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Tackett*, 180 F.3d at 1101 (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). Only limitations supported by substantial evidence must be included in the question. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock*, 240 F.3d at 1163-65. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ set forth a hypothetical question based upon the assessment of Dr. Krishan, which the ALJ adopted for the RFC. Plaintiff does not dispute the limitations determined by the ALJ or that the ALJ failed to convey these limitations to the VE. According to Plaintiff, while "[she] may be able to perform some work in the cited to occupations, her sitting limitations erode the total number of jobs available to her," and the VE should have identified the extent of the erosion. (Doc. 17 at 9).

Significantly, the ALJ called upon the VE "[t]o determine the extent to which [Plaintiff's] limitations erode the unskilled sedentary occupational base." (Doc. 12-3 at 21). The VE did not opine Plaintiff would be able to perform a full range of work, but rather said work existed at that level of exertion that she could perform. (Doc. 12-3 at 59). The ALJ set forth the limitations as provided by Dr. Krishan, and the VE opined such an individual was able to perform work such as order clerk, *DOT* 209.567-014; assembler, *DOT* 734.687-018; and nut sorter, *DOT* 521.687-086. *Id.* The "weight of the medical evidence supports the hypothetical questions posed by the ALJ," and as a result the testimony of VE supports the ALJ's determination that Plaintiff is able to perform work in the national economy. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (an ALJ can satisfy the burden at step five by using a vocational expert's

testimony if the vocational expert testifies in response to a question "that reflects all the claimant's limitations"). Accordingly, the analysis at step five was proper.

**CONCLUSION AND ORDER**

For the foregoing reasons, the ALJ set forth clear and convincing reasons in his credibility assessment, and the testimony of the vocational expert supports the determination that Plaintiff can perform work in the national economy. Because the ALJ applied the proper legal standards, his evaluation of the evidence must be upheld. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn Colvin, Acting Commissioner of Social Security, and against Plaintiff Sherry Brison.

IT IS SO ORDERED.

Dated:   **June 5, 2013**              /s/ Jennifer L. Thurston
                                             UNITED STATES MAGISTRATE JUDGE